# EXHIBIT A

1521

**SUMMONS**

*(CITACION JUDICIAL)*

| | SUM-100 |
|---|---|
| | **FOR COURT USE ONLY**<br>*(SOLO PARA USO DE LA CORTE)* |

**ELECTRONICALLY FILED**
Superior Court of California
County of Ventura
02/13/2026
K. Bieker
Executive Officer and Clerk

By: _____ Deputy Clerk

Lauralei Jensen

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST as successor to The Felt Products Manufacturing Co.;
(See Additional Parties Attachment)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
RAY HENDERSON and CAROLYN HENDERSON

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Ventura County Superior Court

800 S. Victoria Avenue, Ventura, CA 93009

| CASE NUMBER:<br>*(Número del Caso):* |
|---|
| **2026CUAS061442** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Keller, Fishback & Jackson LLP, 28720 Canwood Street Suite 200, Agoura Hills, CA 91301 tel. (818)342-7442

DATE: 02/13/2026          K. Bieker Clerk, by _____ Lauralei Jensen , Deputy
*(Fecha)*                       *(Secretario)*                              *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* **FOSTER WHEELER LLC**

under: ☐ CCP 416.10 (corporation)            ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)        ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
☒ other *(specify):* LLC
4. ☒ by personal delivery on *(date):* 04/02/2026

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

SUM-200(A)

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Ray Henderson, et al. v. Federal-Mogul Personal Injury Trust, et al. | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff    ☒ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST as successor to The Former Vellumoid Division Of Federal-Mogul;

FLOWSERVE CORPORATION, individually and as successor-in-interest to Durametallic Corp., Edward Valves, Pacific Pumps, The Duriron Company, Durco International Inc., and BW/IP, Inc.;

FOSTER WHEELER LLC, individually and as successor-in-interest to Foster Wheeler Corporation and Foster Wheeler Energy Corporation;

GENERAL ELECTRIC COMPANY;

KAISER GYPSUM COMPANY, INC.;

MERITOR, INC., f/k/a Arvinmeritor, Inc.

METALCLAD INSULATION LLC;

MORSE TEC LLC, f/k/a BORGWARNER MORSE TEC, LLC, as successor by merger to Borg-Warner Corporation;

PARAMOUNT GLOBAL, f/k/a VIACOM CBS INC., f/k/a CBS CORPORATION, A DELAWARE CORPORATION, f/k/a VIACOM INC., successor by merger to CBS CORPORATION, A PENNSYLVANIA CORPORATION, f/k/a WESTINGHOUSE ELECTRIC CORPORATION;

PARKER HANNIFIN CORPORATION, individually and as successor-in interest to Parker Seal Company; and Rockwell Mechanical Packing;

REDCO CORPORATION, fka Crane Co., individually and as successor-in-interest to Stockham Valves & Fittings Company, Chapman Valve Mfg. Co. and Alloy Steel Products Co.;

STERLING WANDER LLP, f/k/a Honeywell International, Inc., as successor-in-interest to Bendix;

THE GOODYEAR TIRE AND RUBBER COMPANY,

DOES 1-500

Page __2__ of __2__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: 191646 | FOR COURT USE ONLY |
|---|---|---|
| NAME: Stephen M. Fishback | | |

FIRM NAME: Keller, Fishback & Jackson LLP
STREET ADDRESS: 28720 Canwood Street Suite 200
CITY: Agoura Hills    STATE: CA    ZIP CODE: 91301
TELEPHONE NO: 818.342.7442    FAX NO: 818.342.7616
EMAIL ADDRESS:
ATTORNEY FOR (name): Plaintiffs Ray Henderson and Carolyn Henderson

**ELECTRONICALLY FILED**
Superior Court of California
County of Ventura

02/13/2026
K. Bieker
Executive Officer and Clerk

By: _____ Deputy Clerk
Lauralei Jensen

SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA
STREET ADDRESS: 800 S. Victoria Ave.
MAILING ADDRESS: 800 S. Victoria Ave.
CITY AND ZIP CODE: Ventura, CA 93009
BRANCH NAME: Ventura Hall of Justice

CASE NAME:
Ray Henderson and Carolyn Henderson v. Federal-Mogul Asbestos Personal Injury Trust, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] Unlimited (Amount demanded exceeds $35,000) [ ] Limited (Amount demanded is $35,000 or less) | [ ] Counter [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 2026CUAS061442  JUDGE: DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

Ventura Superior Court transmitted through eFiling 02/13/2026 12:00:00 AM

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Asbestos**
[x] Asbestos (04)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/Unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Employment Development Department (EDD)**
[ ] EDD decision review (48)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.404)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Comprehensive groundwater adjudication (47)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

Judicial Council of California, courts.ca.gov
Rev. January 1, 2026, Mandatory Form
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740
Cal. Stds. Jud. Admin., std. 3.10

**Civil Case Cover Sheet**

CM-010, Page 1 of 3



CM-010

2. Is this case complex under rule 3.400 of the California Rules of Court? ☐ Yes ☒ No

If the case is complex, mark the factors requiring exceptional judicial management:

a. ☐ Large number of separately represented parties

b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve

c. ☐ Substantial amount of documentary evidence

d. ☐ Large number of witnesses

e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court

f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply):

a. ☒ monetary

b. ☐ nonmonetary; declaratory or injunctive relief

c. ☒ punitive

4. Number of causes of action (specify): eight

5. Is this case a class action suit? ☐ Yes ☒ No

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: February 4, 2026

Stephen M. Fishback
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

## NOTICE

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.

- File this cover sheet in addition to any cover sheet required by local court rule.

- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.

- Unless this is a collections case under rule 3.740 of the California Rules of Court or a complex case, this cover sheet will be used for statistical purposes only.

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the Civil Case Cover Sheet contained on pages 1 and 2. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 of the California Rules of Court is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $35,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

SEE PAGE 3 FOR INFORMATION PURPOSES ONLY.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/ Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*
**Asbestos**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/Wrongful Death
**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Product Liability *(not asbestos or toxic/ environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collections Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord-tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition re Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals
**Employment Development Department (EDD)**
EDD Decision Review (48) *(if the case involves an Employment Development Department decision, check this item instead of Wrongful Termination or Other Employment)*

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Comprehensive Groundwater Adjudication (47)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister-State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only Injunctive Relief Only *(non-harassment)*
Mechanic's Lien
Other Commercial Complaint Case *(non-tort/non-complex)*
Other Civil Complaint *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF VENTURA**
800 South Victoria Avenue
Ventura, CA 93009
(805) 289-8525
www.ventura.courts.ca.gov

## NOTICE OF CASE ASSIGNMENT AND MANDATORY APPEARANCE

Your case has been assigned for all purposes to the judicial officer indicated below.

A copy of this Notice of Case Assignment and Mandatory Appearance shall be served by the filing party on all named Defendants/Respondents with the Complaint or Petition, and with any Cross-Complaint or Complaint in Intervention that names a new party to the underlying action.

| Case Number: 2026CUAS061442 | Location: Hall of Justice |
|---|---|
| Assigned Judicial Officer: Charmaine H Buehner | Department: 44 |

| Hearing: MANDATORY APPEARANCE CMC/Order to Show Cause Re Sanctions/Dismissal for Failure to File Proof of Service/Default | | |
|---|---|---|
| Event Date: 08/10/2026 | Event Time: 8:35 AM | Event Department: 44 |

---

### Scheduling Information

**Judicial Scheduling Information:** The above hearing is MANDATORY. Each party is ordered to file a Case Management Statement no later than 15 calendar days prior to the hearing and serve it on all parties. If your Case Management Statement is untimely, it may NOT be considered by the court (CRC 3.725) and you may be sanctioned for noncompliance with a court order (CCP 177.5). If proof of service and/or request for entry of default have not been filed: At the above hearing you are ordered to show cause why you should not be compelled to pay sanctions and/or why your case should not be dismissed (CCP 177.5, Local Rule 3.17).

**Advanced Jury Fee Requirement:** At least one party demanding a jury trial on each side of a civil case must pay a non-refundable jury fee of $150. The non-refundable jury fee must be paid timely pursuant to Code of Civil Procedure section 631.

**Noticed Motions/Ex Parte Matters:** To set an ex parte hearing, contact the judicial secretary in the assigned department. Contact the clerk's office to reserve a date for a law and motion matter.

**Remote Appearances:** Remote appearances by CourtCall at the Mandatory Case Management Conference are permitted pursuant to CRC 3.722, 3.672, Local Rule 7.06, and may be permitted by Zoom per the applicable department rules and policies. To schedule a CourtCall appearance, a party must pre-register with CourtCall at https://courtcall.com/support/faq/registration or call 888-882-6878. To appear by Zoom, consult the rules and procedures of the civil department to which your matter is assigned at https://www.ventura.courts.ca.gov/assignments-vent.html.

---

Clerk of the Court

Date: 03/04/2026

Lauralei Jensen

NTC535
(Rev. 12/19/2024)

NOTICE OF CASE ASSIGNMENT

**KELLER, FISHBACK & JACKSON LLP**
Stephen M. Fishback (State Bar No. 191646)
Douglas V. Dukelow (State Bar No. 225644)
28720 Canwood Street. Ste. 200
Agoura Hills, CA 91301
Telephone: 818.342.7442
Facsimile:  818.342.7616

Attorneys for Plaintiffs

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
### FOR THE COUNTY OF VENTURA

| | |
|---|---|
| RAY HENDERSON and CAROLYN HENDERSON, | Case No.  2026CUAS061442 |
| Plaintiffs, | **NOTICE OF DEPOSITION OF PLAINTIFF RAY HENDERSON** |
| vs. | |
| FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST as successor to The Felt Products Manufacturing Co., et al.. | **Date:**      January 11, 2027<br>**Time:**      10:00 a.m. (Eastern Time)<br>**Location:**   Hampton Inn Morehead<br>                   500 Hampton Way<br>                   Morehead, Kentucky 40351 |
| Defendants. | |

NOTICE OF DEPOSITION OF PLAINTIFF RAY HENDERSON

Page 1

TO ALL DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on **January 11, 2027, at 10:00 a.m.** (Eastern Time) (continuing day to day until completed), at **Hampton Inn Morehead, 500 Hampton Way, Morehead, Kentucky 40351**, plaintiffs in the above-entitled action will take the deposition of Ray Henderson, c/o Keller, Fishback and Jackson, LLP, upon oral examination, pursuant to the California Code of Civil Procedure §2025.220, before a notary public, or other officer authorized to administer oaths. You are invited to attend and to cross-examine.

PLEASE TAKE FURTHER NOTICE that pursuant to California Code of Civil Procedure § 2025.220(6), at the deposition noticed in this matter, scheduled at the date and time indicated herein, and as shall be or have been continued, or advanced, relocated or otherwise rescheduled, plaintiff in the above-entitled action will videotape the testimony of the witness. The videotape and stenographic record shall be made to preserve such testimony for purposes of trial. Plaintiffs will videotape all portions of the testimony whether by examination or notice of plaintiffs or any defendant.

| Name: | Ray Henderson |
|---|---|
| Date: | January 11, 2027 |
| Time: | 10:00 a.m. (Eastern Time) |
| Location: | Hampton Inn Morehead, 500 Hampton Way Morehead, Kentucky 40351 |
| Reporter: | STENO Tel. 888.707.8366 |

///

///

**NOTICE OF DEPOSITION OF PLAINTIFF RAY HENDERSON**

Page 2

A list of all parties on whom this Notice of Deposition is being served, is shown on the accompanying proof of service.

Dated: March 31, 2026                               **KELLER, FISHBACK & JACKSON LLP**

                                    By:     /s/ Douglas V. Dukelow
                                            Douglas V. Dukelow (State Bar No. 225644)
                                            28720 Canwood St., Suite 200
                                            Agoura Hills, CA 91301
                                            Telephone: 818.342.7442
                                            Attorneys for Plaintiffs

---

**NOTICE OF DEPOSITION OF PLAINTIFF RAY HENDERSON**

**KELLER, FISHBACK & JACKSON LLP**
Stephen M. Fishback (State Bar No. 191646)
Daniel L. Keller (State Bar No. 191738)
J. Bruce Jackson (State Bar No. 173215)
28720 Canwood Street, Suite 200
Agoura Hills, California 91301
Telephone: 818.342.7442
Facsimile: 818.342.7616

Attorneys for Plaintiffs

**ELECTRONICALLY FILED**
Superior Court of California
County of Ventura
02/13/2026
K. Bieker
Executive Officer and Clerk

By: _____ Deputy Clerk
Lauralei Jensen

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF VENTURA

| | |
|---|---|
| RAY HENDERSON and CAROLYN HENDERSON,<br><br>Plaintiff,<br><br>vs.<br><br>FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST as successor to The Felt Products Manufacturing Co.;<br>FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST as successor to The Former Vellumoid Division Of Federal-Mogul;<br>FLOWSERVE CORPORATION, individually and as successor-in-interest to Durametallic Corp., Edward Valves, Pacific Pumps, The Duriron Company, Durco International Inc., and BW/IP, Inc.;<br>FOSTER WHEELER LLC, individually and as successor-in-interest to Foster Wheeler Corporation and Foster Wheeler Energy Corporation;<br>GENERAL ELECTRIC COMPANY;<br>KAISER GYPSUM COMPANY, INC.;<br>MERITOR, INC., f/k/a Arvinmeritor, Inc.<br>METALCLAD INSULATION LLC;<br>MORSE TEC LLC, f/k/a BORGWARNER MORSE TEC, LLC, as successor by merger to Borg-Warner Corporation; | Case No. 2026CUAS061442<br><br>**COMPLAINT FOR PERSONAL INJURIES**<br><br>**Negligence**<br>**Strict Liability**<br>**False Representation Under Restatement Section 402-B**<br>**Intentional Tort**<br>**Premises Owner/Contractor Liability**<br>**Negligence-Clutch & Brake Components**<br>**Strict Liability-Clutch & Brake Components**<br>**Loss of Consortium** |

PARAMOUNT GLOBAL, f/k/a VIACOM CBS INC., f/k/a CBS CORPORATION, A DELAWARE CORPORATION, f/k/a VIACOM INC., successor by merger to CBS CORPORATION, A PENNSYLVANIA CORPORATION, f/k/a WESTINGHOUSE ELECTRIC CORPORATION;

PARKER HANNIFIN CORPORATION, individually and as successor-in interest to Parker Seal Company; and Rockwell Mechanical Packing;

REDCO CORPORATION, fka Crane Co., individually and as successor-in-interest to Stockham Valves & Fittings Company, Chapman Valve Mfg. Co. and Alloy Steel Products Co.;

STERLING WANDER LLP, f/k/a Honeywell International, Inc., as successor-in-interest to Bendix;

THE GOODYEAR TIRE AND RUBBER COMPANY;

DOES 1-500;

Defendants.

PLAINTIFFS, RAY HENDERSON and CAROLYN HENDERSON, (hereinafter Plaintiff(s)), COMPLAIN AND ALLEGE AS FOLLOWS as against the above-named defendants:

1.     The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of defendants DOES 1 through 500 are unknown to plaintiff at this time, who therefore sue said defendants by such fictitious names.  When the true names and capacities of said defendants have been ascertained, plaintiffs will amend this complaint accordingly.  Plaintiffs are informed and believe, and thereon allege that each defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages thereby to the plaintiff, as hereinafter alleged.

2.     At all times herein mentioned, each of the defendants was the agent, servant, employee and/or joint venturer of his co-defendants, and each of them, and at all said times, each defendant was acting in the full course and scope of said agency, service, employment and/or joint venture.

3.     Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned, defendants on Exhibits "B", "C", and "D", and DOES 1 through 500, inclusive, were and are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said defendants, or some of them, have regularly conducted business in the County of Ventura, State of California.

### FIRST CAUSE OF ACTION

#### (Negligence)

**PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "B," AND DOES 1-300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGE AS FOLLOWS:**

4. At all times herein mentioned, each of the named defendants and DOES 1 through 300 was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos, and other products containing asbestos. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The following defendants, and each of them, are liable for the acts of each and every "alternate entity," and each of them, in that there has been a virtual destruction of plaintiff's remedy against each such "alternate entity"; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; such "alternate entity"; defendants, and each of them, caused the destruction of plaintiff's remedy against each such "alternate entity"; each such defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and that each such defendant enjoys the goodwill originally attached to each such "alternate entity."

5. At all times herein mentioned, defendants, their "alternate entities," and each of them, were and/or are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,

---

**COMPLAINT FOR PERSONAL INJURIES**

marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos and other products containing asbestos.  Said asbestos and other products containing asbestos (hereinafter "asbestos and other products containing asbestos" and/or "asbestos-containing products") specifically include, but are not limited to: insulation/ insulating materials; gaskets; tape; sealants; packing; gauges; pumps; valves; steam traps; compressors; boilers; turbines; generators; HVAC unit, chiller, coolers, sealants/coatings; adhesives/tape/mastic; brakes/clutches/gaskets; flooring tiles; various building materials (such as ceiling tiles, drywall and drywall finishing products, texture, joint compounds, caulk);  and other materials containing asbestos currently unknown or unspecified by plaintiffs.

6.    At all times herein mentioned, defendants, their "alternate entities" and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the plaintiff herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products unsafe and dangerous for use by "exposed persons".

7.    Defendants, their "alternate entities," and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

8.    Defendants, their "alternate entities" and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos would be transported by truck, rail, ship and other common carriers, that in the shipping process the products would break, crumble or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to sawing, chipping, hammering, scraping,

COMPLAINT FOR PERSONAL INJURIES                                                          PAGE 5

sanding, breaking, removal, "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including plaintiff herein, would use or be in proximity to and exposed to said asbestos fibers.

9.      Plaintiff has used, handled or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's exposure to asbestos and asbestos-containing products occurred at various locations as set forth in Exhibit "A," attached to plaintiff's complaint and incorporated by reference herein.

9a.     Defendants, their "alternate entities," and each of them breached their duties by:  (a) failing to warn plaintiff, Ray Henderson, of the dangers, characteristics, and potentialities of their asbestos-containing products when they knew or should have known that exposure to their asbestos-containing products would cause disease and injury; (b) failing to warn plaintiff of the dangers to which he was exposed when they knew or should have known of the dangers; (c) failing to exercise reasonable care to warn plaintiff of what would be safe, sufficient, and proper protective clothing, equipment, and appliances when working with or near or being exposed to their asbestos and asbestos-containing products; (d) failing to provide safe, sufficient and proper protective clothing, equipment and appliances with their asbestos and asbestos-containing products; (e) failing to test its asbestos and asbestos-containing products in order to ascertain the extent of danger involved upon exposure thereto; (f) failing to conduct such research as should have been conducted in the exercise of reasonable care, in order to ascertain the dangers involved upon exposure to their asbestos and asbestos-containing products; (g) failing to remove the product or products from the market when the defendant corporations knew or should have known of the hazards of exposure to their asbestos and asbestos-containing products; (h) failing upon discovery of the dangers, hazards, and potentialities of exposure to asbestos to adequately warn and apprise plaintiff of said dangers, hazards, and potentialities discovered; (i) failing upon discovery of the dangers, hazards, and potentialities of exposure to asbestos to package said asbestos and asbestos-containing products so as to eliminate said dangers, hazards, and potentialities; (j) failing to advise plaintiff and

others that the risks inherent in their asbestos-containing product greatly outweighed the benefits, if any, afforded by such products; and (k) generally using unreasonable, careless, and negligent conduct in the manufacture, fabrication, supply, distribution, sale, installation, and/or use of their asbestos and asbestos-containing products, among other actions/inactions.

10. As a direct and proximate result of the conduct of the defendants, their "alternate entities," and each of them, as aforesaid, plaintiff's exposure to asbestos and asbestos-containing products caused severe and permanent injury to the plaintiff, the nature of which, along with the date of plaintiff's diagnosis, are set forth in Exhibit "A," attached to plaintiff's complaint and incorporated by reference herein.

11. Plaintiffs are informed and believe, and thereon allege, that progressive lung disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing products over a period of time.

12. Plaintiff suffers from a condition related to exposure to asbestos and asbestos-containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

13. As a direct and proximate result of the aforesaid conduct of defendants, their "alternate entities," and each of them, plaintiff has suffered, and continues to suffer, permanent injuries and/or future increased risk of injuries to his person, body and health, including, but not limited to, asbestosis, and other lung damage and pleural disease, and the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to his general damage in the sum in excess of the jurisdictional limits of a limited civil case in the Superior Court.

14. As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, plaintiff has incurred, is presently incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof being unknown to plaintiff at this

time, and plaintiffs pray leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

15.    As a further direct and proximate result of the said conduct of the defendants, their "alternate entities," and each of them, plaintiff has incurred, and will incur, loss of income, wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to plaintiff; and leave is requested to amend this complaint to conform to proof at the time of trial.

16.    Defendants, their "alternate entities," and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

17.    Defendants, their "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and each defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

18.    The herein-described conduct of said defendants, their "alternate entities," and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons." Plaintiff, for the sake of example and by way of punishing said defendants, seek punitive damages according to proof.

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

### SECOND CAUSE OF ACTION

#### (Strict Liability)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "B," DOES 1-300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

19.    Plaintiffs incorporate herein by reference, as though fully set forth herein, the

---

COMPLAINT FOR PERSONAL INJURIES                                                      PAGE 8

allegations contained in Paragraphs 4-5 and 8-18 of the First Cause of Action herein.

20. Defendants, their "alternate entities," and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

21. Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The defect existed in said products at the time they left the possession of defendants, their "alternate entities," and each of them. Said products did, in fact, cause personal injuries, including asbestosis and asbestos pleural disease, other lung damage, and cancer to "exposed persons," including plaintiff herein, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and dangerous for use.

22. "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons". Said defendants, their "alternate entities," and each of them, further failed to adequately warn of the risks to which plaintiff and others similarly situated were exposed.

23. In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products, defendants, their "alternate entities," and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, in that said defendants, their "alternate entities," and each of them, had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-containing products, including, but not limited to, mesothelioma, lung cancer, and asbestosis and asbestos pleural disease. Said knowledge was obtained, in part, from scientific studies, government data, and medical data to which defendants had access, as well as scientific studies performed by, at the request of, or with

the assistance of, said defendants, their "alternate entities," and each of them, and which knowledge was obtained by said defendants, their "alternate entities," and each of them on or before 1930, and thereafter.

24. On or before 1930, and thereafter, said defendants, their "alternate entities" and each of them, were aware that members of the general public and other "exposed persons," who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said defendants, their "alternate entities," and each of them, knew that members of the general public and other "exposed persons," who came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

25. With said knowledge, said defendants, their "alternate entities," and each of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, re-brand, manufacture for others, package and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, defendants, their "alternate entities," and each of them, intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their "alternate entities," and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

26. The above-referenced conduct of said defendants, their "alternate entities," and

each of them, was motivated by the financial interest of said defendants, their "alternate entities," and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, re-branding, manufacturing for others, packaging and advertising of asbestos and asbestos-containing products. In pursuance of said financial motivation, said defendants, their "alternate entities," and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including plaintiff.

27. Plaintiffs allege that the aforementioned defendants, their "alternate entities," and each of them impliedly warranted their asbestos and asbestos-containing products, to be safe for their intended use but that their asbestos and asbestos-containing products, created an unreasonable risk of bodily harm to exposed persons.

28. Plaintiffs further allege plaintiff's injuries are a result of cumulative exposure to asbestos and various asbestos-containing products manufactured, fabricated, inadequately researched, designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised by the aforementioned defendants, their "alternate entities," and each of them and that plaintiff cannot identify precisely which asbestos or asbestos-containing products caused the injuries complained of herein.

29. Plaintiff relied upon defendants', their "alternate entities'," and each of their representations, lack of warnings, and implied warranties of fitness of asbestos and their asbestos-containing products. As a direct, foreseeable and proximate result thereof, plaintiff has been injured permanently as alleged herein.

30. As the above referenced conduct of said defendants was and is vile, base, willful, malicious, fraudulent, oppressive, outrageous, and in conscious disregard and indifference to the

---

COMPLAINT FOR PERSONAL INJURIES                                                              PAGE 11

safety and health of "exposed persons", including plaintiff who has suffered the injuries and damages previously alleged, plaintiffs, for the sake of example, and by way of punishing said defendants, seek damages according to proof.

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

### THIRD CAUSE OF ACTION

**(False Representation Under Restatement of Torts Section 402-B)**

**AS AND FOR A FURTHER, THIRD, SEPARATE AND DISTINCT CAUSE OF ACTION FOR FALSE REPRESENTATION UNDER RESTATEMENT OF TORTS SECTION 402-B, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "B," DOES 1-300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:**

31.     Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the First and Second Causes of Action.

32.     At all times herein mentioned, each of the named defendants and DOES 1 through 300 was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos, and other products containing asbestos. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased,

bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The following defendants, and each of them, are liable for the acts of each and every "alternate entity," and each of them, in that there has been a virtual destruction of plaintiff's remedy against each such "alternate entity"; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; such "alternate entity"; defendants, and each of them, caused the destruction of plaintiff's remedy against each such "alternate entity"; each such defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and that each such defendant enjoys the goodwill originally attached to each such "alternate entity."

33.    At all times herein mentioned, defendants, their "alternate entities," and each of them, were and/or are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos and other products containing asbestos. Said asbestos and other products containing asbestos (hereinafter "asbestos and other products containing asbestos" and/or "asbestos-containing products") specifically include, but are not limited to: insulation/ insulating materials; gaskets; tape; sealants; packing; gauges; pumps; valves; steam traps; compressors; boilers; turbines; generators; HVAC unit, chiller, coolers, sealants/coatings; adhesives/tape/mastic; brakes/clutches/gaskets; flooring tiles; various building materials (such as ceiling tiles, drywall and drywall finishing products, texture, joint compounds, caulk);  and other materials containing asbestos currently unknown or unspecified by plaintiff.

34.    At all times herein mentioned, defendants, their "alternate entities" and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-

COMPLAINT FOR PERSONAL INJURIES                                                                PAGE 13

branded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the plaintiff herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products unsafe and dangerous for use by "exposed persons".

35.   Defendants, their "alternate entities," and each of them, also engaged in a false and deceptive marketing campaign, by making public representations that their products were safe, when they in fact were not safe.  These material misrepresentations included those designed specifically for deceiving residents of California, including plaintiff, her co-workers, and other purchasers and users of their products and services, into believing their products and services were safe, when they were not safe.  The false advertising and marketing of the products included radio, television, print, and other media, as well as the product packaging itself, which expressly and/or impliedly indicated that those hazardous products were safe. These false advertisements included those which were targeted to local California residents, businesses, and other purchasers and users of defendants' products and services, and were placed in local print media, such as newspapers and business directories in plaintiff's California local community.  Defendants, their "alternate entities," and each of them, were also integral contributors to the false advertising campaign through their contributions in the research, design, and placement of the misrepresentations on the products, at distributions centers, and in media.

36.   Defendants, their "alternate entities," and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

37.   Defendants, their "alternate entities" and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos would be transported by truck, rail, ship and other common carriers, that in the shipping process the products would break, crumble or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to sawing, chipping, hammering, scraping,

COMPLAINT FOR PERSONAL INJURIES                                              PAGE 14

sanding, breaking, removal, "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including plaintiff herein, would use or be in proximity to and exposed to said asbestos fibers.

38.    Plaintiff has used, handled or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's exposure to asbestos and asbestos-containing products occurred at various locations as set forth in Exhibit "A," attached to plaintiff's complaint and incorporated by reference herein.

39.    As a direct and proximate result of the conduct of the defendants, their "alternate entities," and each of them, as aforesaid, plaintiff's exposure to asbestos and asbestos-containing products caused severe and permanent injury to the plaintiff, the nature of which, along with the date of plaintiff's diagnosis, are set forth in Exhibit "A," attached to plaintiff's complaint and incorporated by reference herein.

40.    Plaintiffs are informed and believe, and thereon allege, that progressive lung disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing products over a period of time.

41.    Plaintiff suffers from a condition related to exposure to asbestos and asbestos-containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

42.    As a direct and proximate result of the aforesaid conduct of defendants, their "alternate entities," and each of them, plaintiff has suffered, and continues to suffer, permanent injuries and/or future increased risk of injuries to his person, body and health, including, but not limited to, lung cancer, and the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to his general damage in the sum in excess of the jurisdictional limits of a limited civil case in the Superior Court.

43.    As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, plaintiff has incurred, is presently incurring, and will incur

COMPLAINT FOR PERSONAL INJURIES                                                    PAGE 15

in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof being unknown to plaintiff at this time, and plaintiffs pray leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

44.    As a further direct and proximate result of the said conduct of the defendants, their "alternate entities," and each of them, plaintiff has incurred, and will incur, loss of income, wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to plaintiff; and leave is requested to amend this complaint to conform to proof at the time of trial.

45.    Defendants, their "alternate entities," and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of or should have knowledge of each of the acts set forth herein.  The specific names, job titles, positions, or other identifying offices of said individuals are necessarily in possession of defendants and full information concerning the facts relevant to this controversy and defendants, and each of them, have more knowledge or the identities of said persons than plaintiff, herein.

46.    At the aforementioned time when defendants, their "alternate entities," and each of them, researched, manufactured, fabricated, designed, modified, tested or failed to test, inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised the said asbestos and asbestos-containing products, as herein above set forth, the defendants, their "alternate entities," and each of them, expressly and impliedly represented to members of the general public, including the purchasers and users of said product, and other "exposed persons," including the plaintiff herein and potentially some or all of his employers, that asbestos and asbestos-containing products, were of merchantable quality, free of defects, and safe for the use for which they were intended. Said misrepresentations of such material facts impacting the safety, reliability, and quality of defendants' asbestos-containing products specifically included

COMPLAINT FOR PERSONAL INJURIES                                                    PAGE 16

the failure to disclose known or suspected hazards of working with and around said asbestos-containing products to the plaintiff and others. Defendants' misrepresentations went far beyond the bounds of mere promises because defendants affirmatively stated through those means more fully described herein that defendants' asbestos and/or asbestos-containing products were safe and safe to use for their intended uses, but they were not safe. Defendants knew or should have known at the time of their misrepresentations that such representations were false; defendants knew or should have known at the time of their misrepresentations that their asbestos and/or asbestos-containing products were not safe or safe for their intended uses. Despite knowing of the dangers to plaintiff of working with and around defendants' asbestos and/or asbestos-containing, defendants failed to disclose such dangers and in fact concealed the same from plaintiff. Defendants' misrepresentations and concealment of the dangers attendant to working with and around defendants' asbestos and/or asbestos-containing products occurred during such periods as defendants researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised asbestos and other products containing asbestos, and more specifically as it relates to plaintiff, during those periods of employment when plaintiff worked with defendants' asbestos and/or asbestos-containing products as detailed in Exhibit A. The facts misrepresented regarding the safety, reliability, and quality of defendants' asbestos-containing products are necessarily in possession of defendants who have full information concerning the facts relevant to this controversy and defendants, and each of them, have more knowledge or the facts of said misrepresentations than plaintiff, herein.

47.     The purchasers and users of said asbestos and asbestos-containing products, and other "exposed persons," including the plaintiff and potentially some or all of his employers, relied upon said representations of defendants, their "alternate entities," and each of them, *as defendants, their "alternate entities," and each of them so intended,* in the selection, purchase and use of asbestos and asbestos-containing products.

48. Said representations by defendants, their "alternate entities," and each of them, were false and untrue, and defendants knew or should have known at the time they were untrue, in that the asbestos and asbestos-containing products were not safe for their intended use, nor were they of merchantable quality as represented by defendants, their "alternate entities," and each of them, in that asbestos and asbestos-containing products have very dangerous properties and defects whereby said products cause asbestosis and asbestos pleural disease, other lung damages and cancer, and have other defects that cause injury and damage to the users of said products and other "exposed persons," thereby threatening the health and life of said persons including plaintiff herein.

49. Defendants, their "alternate entities," and each of them, based on the state of scientific and medical literature, as well as their own studies and research conducted regarding the health hazards associated with working with and/or around asbestos-containing product had no reasonable basis for believing the untrue representations made to plaintiff, plaintiff's employers, and other groups and organizations with which plaintiff was affiliated, such as unions, through which plaintiff would reasonably be expected to learn of such misrepresentations.

50. Plaintiff and others, lacking the sophistication and knowledgeable regarding the health hazards of working with and around defendants', their alternate entities, and each of them, asbestos-containing products and relied upon the said misrepresentations and were, in fact, deceived into believing that said asbestos-containing products were safe and free of defects and would not cause severe risk of injury and death. Had plaintiff known that defendants' asbestos and/or asbestos-containing products were unsafe for their intended uses, plaintiff would not have used and/or worked around the same or taken other steps to properly safeguard his health or the health of others when working with or around defendants' and others' asbestos-containing products.

51. The facts intentionally omitted or misstated regarding the safety, reliability, and quality of defendants' asbestos and/or asbestos-containing products were/are necessarily in possession of defendants who had/have full information concerning the facts relevant to this

COMPLAINT FOR PERSONAL INJURIES                                                    PAGE 18

controversy and defendants, and each of them, had/have more knowledge of the facts of said concealments and nondisclosures than plaintiff, herein.

52.    As a direct and proximate result of said false representations by defendants, their "alternate entities," and each of them, the plaintiff sustained the injuries and damages herein above set forth.

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### (Intentional Tort)

**AS AND FOR A FURTHER, FOURTH, SEPARATE AND DISTINCT CAUSE OF ACTION FOR AN INTENTIONAL TORT UNDER CIVIL CODE SECTIONS 1708 THROUGH 1710, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "B," DOES 1-300, THEIR "ALTERNATE ENTITIES," AND ALLEGE AS FOLLOWS:**

53.    Plaintiffs, by this reference, hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the Third Causes of Action herein, excepting therefrom allegations pertaining to negligence.

54.    At all times pertinent hereto, the defendants, their "alternate entities," and each of them, owed plaintiff a duty, as provided for in Section 1708, 1709 and 1710 of the Civil Code of the State of California, to abstain from injuring the person, property or rights of the plaintiff. When a duty to act was imposed, as set forth herein, the defendants, their "alternate entities," and each of them, did do the acts and omissions in violation of that duty, thereby causing injury to the plaintiff as is more fully set forth herein. Such acts and omissions consisted of acts falling within Section 1709 (Deceit) and Section 1710 (Fraud) and, more specifically, included suggestions of fact which were not true and which defendants, their "alternate entities," and each of them, did not believe to be true; assertions of fact which were not true and which defendants, their "alternate entities," and each of them, had no reasonable ground for believing to be true, and the suppression of fact when a duty existed to disclose it, all as are more fully set forth herein; the violation of any one such duty gave rise to a cause of action for violation of the rights

of the plaintiff as provided for in the aforementioned Civil Code sections.

55.     Since on or before 1930, the defendants, their "alternate entities," and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that the asbestos and asbestos-containing products referred to in plaintiff's First Cause of Action were and are hazardous to the health and safety of plaintiff, and others in plaintiff's position working in close proximity with such materials. The defendants, their "alternate entities," and each of them, have known of the dangerous propensities of other of the aforementioned materials and products since before that time. Defendants' misrepresentations went far beyond the bounds of mere promises because defendants affirmatively stated through those means more fully described herein that defendants' asbestos and/or asbestos-containing products were safe and safe to use for their intended uses, but they were not safe.  Defendants knew at the time of their misrepresentations that such representations were false; defendants knew at the time of their misrepresentations that their asbestos and/or asbestos-containing products were not safe or safe for their intended uses. Despite knowing of the dangers to plaintiff of working with and around defendants' asbestos and/or asbestos-containing, defendants failed to disclose such dangers and in fact concealed the same from plaintiff.  Defendants' misrepresentations and concealment of the dangers attendant to working with and around defendants' asbestos and/or asbestos-containing products occurred during such periods as defendants researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised asbestos and other products containing asbestos, and more specifically as it relates to plaintiff, during those periods of employment when plaintiff worked with defendants' asbestos and/or asbestos-containing products as detailed in exhibit A.  The mere fact that defendant made its asbestos-containing products available for purchase, use, sale, or otherwise to plaintiff and others was an intentional and affirmative fraudulent act.  With intent to deceive, falsely represent facts regarding the true hazards of

working with and around asbestos-containing products, conceal the health risks associated with working in an asbestos-contaminated environment, and purposefully failing to disclosure such material facts to plaintiff, and others in plaintiff's position, and with the intent that plaintiff and such others should be and remain ignorant of such facts with intent to induce plaintiff and such others to alter his and their positions to his detriment, injury and/or risk and in order to gain economic advantages within the market, the following acts occurred:

a. Defendants, their "alternate entities," and each of them, did not label any of the aforementioned asbestos-containing materials and products regarding the hazards of such materials and products to the health and safety of plaintiff and others in plaintiff's position working in close proximity with such materials until 1964 when certain of such materials were labeled by some, but not all, of defendants, their "alternate entities," and each of them, herein when the knowledge of such hazards was existing and known to defendants, their "alternate entities," and each of them, since on or before 1930. By not labeling such materials as to their said hazards, defendants, their "alternate entities," and each of them, caused to be suggested as a fact to plaintiff that it was safe for plaintiff to work in close proximity to such materials when in fact it was not true and defendants, their "alternate entities," and each of them, did not believe it to be true;

b. Defendants, their "alternate entities," and each of them, suppressed information relating to the danger of use of the aforementioned materials by requesting the suppression of information to the plaintiff and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when defendant, their "alternate entities," and each of them, were bound to disclose such information;

c. Defendants, their "alternate entities," and each of them, sold the aforementioned products and materials to plaintiff's employers and others without advising plaintiff and others of the dangers of use of such materials to persons working in close proximity

COMPLAINT FOR PERSONAL INJURIES                                    PAGE 21

thereto when defendants, their "alternate entities," and each of them, knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, defendants, their "alternate entities," and each of them, caused to be positively asserted to plaintiff that which was not true and that which defendants, their "alternate entities," and each of them, had no reasonable ground for believing to be true, to wit, that it was safe for plaintiff to work in close proximity to such materials;

d.      Defendants, their "alternate entities," and each of them, suppressed from plaintiff medical and scientific data and knowledge of the results of studies including, but not limited to, the information and knowledge of the contents of the Lanza report. Although bound to disclose it, defendants, their "alternate entities," and each of them influenced A. J. Lanza to change his report, the altered version of which was published in Public Health Reports, Volume 50 at page 1 in 1935, thereby causing plaintiff and others to be and remain ignorant thereof. Defendants, their "alternate entities," and each of them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to the users thereof;

e.      Defendants, their "alternate entities," and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, for and on behalf of defendants, their "alternate entities," and each of them, actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading plaintiff by the suggestions and deceptions set forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to plaintiff at this time;

f.      Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants

---

in Manheim and Charleston, South Carolina, defendants, their "alternate entities," and each of them, knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis and asbestos pleural disease, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other defendants, their "alternate entities," and each of them, herein. Between 1942 and 1950, the defendants, their "alternate entities," and each of them, acquired medical and scientific information of the connection between inhalation of asbestos fibers and cancer, which information was disseminated through the Asbestos Textile Institute and other industry organizations to defendant herein. Thereby, defendants, their "alternate entities," and each of them, suggested to the public as a fact that which is not true and disseminated other facts likely to mislead plaintiff. Such facts did mislead plaintiff and others by withholding the afore-described medical and scientific data and other knowledge and by not giving plaintiff the true facts concerning such knowledge of danger, which defendants, their "alternate entities," and each of them, were bound to disclose;

g.    Defendants, their "alternate entities," and each of them, failed to warn plaintiff and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that defendants, their "alternate entities," and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

h.    Defendants, their "alternate entities," and each of them, failed to provide plaintiff with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the defendants, and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to the plaintiff and others applying and installing such material;

i.    Defendants, their "alternate entities," and each of them, when under a duty to so disclose, concealed from plaintiff the true nature of the industrial exposure of plaintiff

COMPLAINT FOR PERSONAL INJURIES                                                    PAGE 23

and knew that plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis and asbestos pleural disease and/or cancer. Defendants, their "alternate entities," and each of them, also concealed from plaintiff and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

j.    Defendants, their "alternate entities," and each of them, failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these materials would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by plaintiff and potentially plaintiff's employers so that said physicians could examine, diagnose and treat plaintiff and others who were exposed to asbestos, despite the fact that defendants, their "alternate entities," and each of them, were under a duty to so inform and said failure was misleading; and

k.    Defendants, their "alternate entities," and each of them, failed to provide adequate information to physicians and surgeons retained by plaintiff's employers and their predecessor companies, for purposes of making physical examinations of plaintiff and other employees as to the true nature of the risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

56.    Defendants, their "alternate entities," and each of them, based on the state of scientific and medical literature, as well as their own studies and research conducted regarding the health hazards associated with working with and/or around asbestos-containing product, knew that the representations made to plaintiff, plaintiff's employers, and other groups and organizations with which plaintiff was affiliated, such as unions, through which plaintiff would reasonably be expected to learn of such representations were false.

57.    Defendants, their "alternate entities," and each of them, willfully failed and omitted to complete and file First Report of Occupational Injury of Illness regarding plaintiff's injuries, as required by law, and did willfully fail and omit to file report of injury and occupational disease with the State of California. Defendants similarly intentionally failed to state and disclose on their asbestos-containing products and/or packaging the asbestos-related

COMPLAINT FOR PERSONAL INJURIES                                              PAGE 24

health risk, including risk of asbestosis and asbestos pleural disease and cancer, which resulted from plaintiff and others working with and around defendants' asbestos-containing products.

58.     Plaintiff was in the class of persons with respect to whom a duty was owed to file such reports and who would have been protected thereby if the fact of danger from products complained of had become known and plaintiff was in the class of persons to whom a duty was owed as a consumer and user of defendants' asbestos-containing products to be informed truthfully about the risks of using such asbestos-containing products. Plaintiff and others, neither sophisticated nor knowledgeable regarding asbestos health hazards and the intentions to deceive by defendants, justifiably relied on defendants' claims and representations regarding their asbestos-containing products. Had plaintiff known that defendants' asbestos and/or asbestos-containing products were unsafe for their intended uses, plaintiff would not have used and/or worked around the same.

59.     Defendants, their "alternate entities," and each of them, having such aforementioned knowledge, and the duty to inform plaintiff about the true facts, and knowing the plaintiff did not possess such knowledge and would work with and around and ultimately breathe such material innocently, acted falsely and fraudulently and with full intent to cause plaintiff to remain unaware of the true facts and to induce plaintiff to work in a dangerous environment by failing to disclose known information regarding asbestos health hazards, all in violation of Sections 1708, 1709, 1710, and 1711 of the Civil Code of the State of California in an expectation of further sales and proceeds from the supply of defendants' asbestos-containing products.

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

## FIFTH CAUSE OF ACTION

### (Premises Owner/Contractor Liability)

AS AND FOR A FURTHER AND FIFTH SEPARATE AND DISTINCT CAUSE OF ACTION, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "C," DOES 301-450, THEIR "ALTERNATE ENTITIES," (HEREINAFTER "PREMISES

OWNER/CONTRACTOR LIABILITY DEFENDANTS"), AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

60.    Plaintiffs, by this reference, incorporate the allegations contained in paragraphs 9-16 of the First Cause of Action.

61.    At all times herein mentioned, each of the Premises Owner/Contractor Liability Defendants listed on Exhibit "C" was a successor, successor-in-business, assign, predecessor, predecessor-in-business, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of an entity causing certain asbestos-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, replaced, repaired and/or removed on the respective premises owned, leased, maintained, managed and/or controlled by them. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein-named defendants is liable for the tortious conduct of each successor, successor-in-business, assign, predecessor-in-business, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, that caused the presence as aforesaid of said asbestos-containing insulation and other toxic substances. The defendants, and each of them, are liable for the acts of each and every "alternate entity," and each of them, in that there has been a virtual destruction of plaintiff's remedy against each such alternate entity; defendants, and each of them, have acquired the assets, or a portion thereof, of each such alternate entity; defendants, and each of them, have caused the destruction of plaintiff's remedy against each such alternate entity; each such defendant has the ability to assume the risk-spreading role of each such alternate entity, and that each such defendant enjoys the goodwill originally attached to each such alternate entity.

62.    At all times mentioned herein, the above-listed Premises Owner/Contractor Liability Defendants, and each of them, respectively, owned, leased, maintained, managed, and/or controlled the premises listed on Exhibit "A" and others where plaintiff was present. The information provided on Exhibit "A" is preliminary, based on recall over events covering many years and further investigation and discovery may produce more reliable information. Additionally, plaintiff might have been present at those or other Premises Owner/Contractor Liability Defendants' premises at other locations and on other occasions.

COMPLAINT FOR PERSONAL INJURIES                                                  PAGE 26

63. Prior to and at said times and places, said Premises Owner/Contractor Liability Defendants, and each of them, respectively, caused certain asbestos-containing materials, other building materials, products and toxic substances to be constructed, installed, disturbed, maintained, used, supplied, replaced, repaired and/or removed on each of the aforesaid respective premises, by their own workers and/or by various contractors and/or subcontractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby created a hazardous and unsafe condition to plaintiff and other persons exposed to said asbestos fibers and toxic substances while present at said premises.

64. At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, knew or in the exercise of ordinary and reasonable care should have known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition and unreasonable risk of harm and personal injury to plaintiff and other workers or persons so exposed present on each of the aforesaid respective premises.

65. At all times relevant herein, plaintiff entered said premises and used or occupied each of said respective premises as intended and for each of the respective Premises Owner/Contractor Liability Defendants' benefit and advantage and at each of the respective Premises Owner/Contractor Liability Defendants' request and invitation. In so doing, plaintiff was exposed to dangerous quantities of asbestos fibers and other toxic substances released into the ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated, and/or otherwise created, controlled, or caused by said Premises Owner/Contractor Liability Defendants, and each of them.

66. Plaintiff at all times was unaware of the hazardous condition or the risk of personal injury created by the aforesaid presence and use of asbestos products and materials and other toxic substances on said premises.

67. The hazardous condition or risk of personal injury created by the aforesaid presence and use of asbestos products and materials and other toxic substances on said premises was not a known condition that plaintiff's employer was hired to correct or repair.

68. At all times mentioned herein, said Premises Owner/Contractor Liability

Defendants, and each of them, remained in control of the premises where plaintiff was performing his work.

69. At all times mentioned herein, the Premises Owner/Contractor Liability Defendants owed to plaintiff and others similarly situated a duty to exercise ordinary care in the management of such premises in order to avoid exposing workers such as plaintiff to an unreasonable risk of harm and to avoid causing injury to said person.

70. At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions and that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises.

71. At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, negligently failed to maintain, manage, inspect, survey, or control said premises or to abate or correct, or to warn plaintiff of, the existence of the aforesaid dangerous conditions and hazards on said premises.

72. At all times herein mentioned, said Premises Owner/Contractor Liability Defendants, and each of them, negligently provided unsafe equipment, for the performance of the work that caused or contributed to plaintiff's injuries.

73. Prior to and at the times and places aforesaid, said Premises Owner/Contractor Liability Defendants, and each of them, respectively, caused certain asbestos-containing materials, other building materials, products and toxic substances to be constructed, installed, maintained, used, replaced, repaired and/or removed on each of their aforesaid respective premises, by their own workers and/or by employing various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby injured plaintiff.

74. At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, should have recognized that the work of said contractors would

create during the progress of the work, dangerous, hazardous, and unsafe conditions which could or would harm plaintiff and others unless special precautions were taken. The said Premises Owner/Contractor Liability Defendants, and each of them, knew or should have known that the work required special procedures and instruction so as to be accomplished in a safe manner and avoid injury to plaintiff and others. The Premises Owner/Contractor Liability Defendants were aware or should have been aware that such special procedures and instructions were not taken nor provided.

75.    In part, plaintiff was exposed to dangerous quantities of asbestos fibers and other toxic substances by reason of such premises owners and/or contractors' failure to take the necessary precautions.

76.    The work, actions and/or inactions of contractors on premises controlled by the Premises Owner/Contractor Defendants created an unsafe premise and an unsafe work place by reason of the release of dangerous quantities of toxic substances including but not limited to asbestos.

77.    The unsafe premise or work place was created, in part, by the negligent conduct of the contractors employed by the Premises Owner/Contractor Defendants. Said negligent conduct includes but is not limited to:

        a.    Failure to advise and warn of asbestos and other toxic dusts;

        b.    Failure to suppress the asbestos-containing or toxic dusts;

        c.    Failure to remove the asbestos-containing and toxic dusts through use of ventilation or other approved appropriate means;

        d.    Failure to provide adequate breathing protection, i.e., approved respirators or masks;

        e.    Failure to inspect and/or test the air;

        f.    Failure to provide proper medical monitoring, medical check-ups, and reviews, and provide reports and findings on any such check-ups or monitoring that did occur.

78.    The Premises Owner/Contractor Defendants' duty to maintain and provide safe

premises, a safe place to work, and to warn of dangerous conditions are non-delegable; said duties arise out of common law, Civil Code §1708, and Labor Code §6400, et seq., or Health and Safety Code §40200, et seq., and regulations promulgated thereunder. Therefore, the Premises Owner/Contractor Defendants are responsible for any breach of said duties whether by themselves or others.

79. Prior to and at said times and places, said Premises Owner/Contractor Liability Defendants were subject to certain ordinances, statutes, and other government regulations promulgated by the United States Government, the State of California, local and regional governments and agencies, and others, including but not limited to the General Industry Safety Orders promulgated pursuant to California Labor Code §6400 and the California Administrative Code under the Division of Industrial Safety, Department of Industrial Relations, including but not limited to Title VIII, Group 9 (Control of Hazardous Substances), Article 81, §§4150, 4106, 4107, and 4108, and Threshold Limit Values as documented for asbestos and other toxic substances under Appendix A, Table 1 of said Safety Orders; additionally, California Health and Safety Code §40200, et seq., which empowers the Bay Area Air Quality Management District and South Coast Air Quality Management District to promulgate regulations including but not limited to BAAQMD, Regulation 11, Rules 2 and 14, Title 40 Code of Federal Regulations, Chapter 1, Part 61, et seq., and related SCAQMD regulations, The National Emission Standards for Hazardous Air Pollutants, which required said Premises Owner/Contractor Liability Defendants to provide specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances; and said Premises Owner/Contractor Liability Defendants failed to provide the required safeguards and precautions, or contractors employed by the Premises Owner/Contractor Liability Defendants failed to provide the required safeguards and precautions. Defendants' violations of said codes include but are not limited to:

    a.    Failing to comply with statutes and allowing ambient levels of airborne asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned statutes;

    b.    Failing to segregate work involving the release of asbestos or other toxic

dusts;

c. Failing to suppress dust using prescribed ventilation techniques;

d. Failing to suppress dust using prescribed "wet down" techniques;

e. Failing to warn or educate plaintiff or others regarding asbestos or other toxic substances on the premises;

f. Failing to provide approved respiratory protection devices;

g. Failing to ensure "approved" respiratory protection devices were used properly;

h. Failing to provide for an on-going health screening program for those exposed to asbestos on the premises which included disclosure and/or discussion of ongoing health consequences of asbestos exposure with plaintiff;

i. Failing to provide adequate housekeeping and clean-up of the work place;

j. Failing to properly warn of the hazards associated with asbestos as required by these statutes;

k. Failing to properly report renovation and disturbance of asbestos-containing materials, including but not limited to B.A.A.Q.M.D. Regulation 11-2-401 and S.C.A.Q.M.D regulations;

l. Failing to have an asbestos removal supervisor as required by regulation;

m. Failing to get approval for renovation as required by statutes;

n. Failing to maintain records as required by statute; and

o. Failing to provide plaintiff with alternative, safe, asbestos-free work areas and/or failure to remove plaintiff from an asbestos-laden environment where ongoing exposures to asbestos increased the risk of plaintiff contracting an asbestos-related disease.

p. Failing to apprise plaintiff of the results of any such medical monitoring of physical check-ups that occurred and the risks of contracting asbestos-related diseases.

COMPLAINT FOR PERSONAL INJURIES                                              PAGE 31

80.     Plaintiff at all times was unaware of the hazardous condition or the risk of personal injury created by defendants' violation of said regulations, ordinances or statutes.

81.     At all times mentioned herein, plaintiff was a member of the class of persons whose safety was intended to be protected by the regulations, statutes or ordinances described in the foregoing paragraphs.

82.     In such circumstances where plaintiff was the employee or "statutory employee" of said Premises Owner/Contractor Liability Defendants as defined by the California Labor Code and related California case law interpretations, such Premises Owner/Contractor Liability Defendants owed a duty of care to prevent injury, harm, damage, or loss to plaintiff. Instead, well outside the normal risk of plaintiff's employment, said Premises Owner/Contractor Liability Defendants caused plaintiff to be exposed to asbestos-containing products and other airborne toxic asbestos, fraudulently concealed and failed to disclose the unsafe premises and conditions due to asbestos and toxic products contamination, as well as the known and recognized injurious health consequences of repeated and reoccurring exposures by plaintiff to asbestos-containing products, materials, and other toxic asbestos substances, and plaintiff's exposure to asbestos-containing products and the concurrent injury to his person was aggravated by the employer's fraudulent concealment of the existence of hazardous asbestos-containing products exposure and concurrent injury and its connection with plaintiff's employment and job duties. Moreover, plaintiff's said Premises Owner/Contractor Liability Defendants employers illegally failed to obtain and maintain proper and sufficient workers' compensation insurance or failed to obtain workers' compensation insurance which covered plaintiff's injuries, damages, losses, or harms, such that the California Labor Code sections 3600, 3700, *et seq.*, permit recovery in Superior Court.

83.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions, that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the

COMPLAINT FOR PERSONAL INJURIES                                                                     PAGE 32

premises, and that such persons were unaware of the aforesaid violations of codes, regulations and statutes.

84.     Said Premises Owner/Contractor Liability Defendants knew of the harmful exposures to asbestos sustained by plaintiff at, by and/or through the actions and/or inactions of their own employees or others under the direct and immediate instruction, control and/or supervision of said Premises Owner/Contractor Liability and said Premises Owner/Contractor Liability Defendants concealed and/or failed to disclose to plaintiff the harmful effects and bodily injuries suffered by plaintiff as a result of such exposures to asbestos.

85.     As a legal consequence of the foregoing, plaintiff developed an asbestos-related illness, which has caused great injury and disability as previously set forth, and plaintiff has suffered damages as herein alleged.

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

## SIXTH CAUSE OF ACTION

### (Negligence – Clutch & Brake Components)

AS AND FOR A FURTHER SIXTH SEPARATE AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY (NEGLIGENCE) FOR CLUTCH COMPONENTS AND BRAKE ASSEMBLIES, MECHANISMS AND LININGS, PLAINTIFFS COMPLAIN OF DEFENDANTS LISTED ON EXHIBIT "D" ATTACHED HERETO, and DOES 451-500, AND ALLEGE AS FOLLOWS:

86.     Plaintiffs, by this reference, incorporate the allegations contained in the First through Fourth Causes of Action as though fully set forth herein.

87.     Defendants listed on Exhibit "D" attached hereto and DOES 451-500, manufactured or supplied defective asbestos-containing products, materials, and parts including, but not limited to: automobiles, trucks, construction equipment, heavy equipment, and/or other vehicles. Additionally and/or alternatively, said defendants manufactured and/or supplied defective asbestos-containing products, materials, and parts including, but not limited to: clutch components; brake components; brake assemblies, linings, and mechanisms; clutch assemblies,

linings, and mechanisms; gaskets; mufflers; and other related products which were incorporated into various makes and models of automobiles, trucks, construction equipment, heavy equipment, equipment of varied sorts, and/or other vehicles manufactured, sold or supplied by said defendants as original and/or aftermarket equipment.  Said asbestos-containing products, including automobiles, trucks, construction equipment, heavy equipment, as well as clutch components and brake assemblies or mechanisms or linings and gaskets and mufflers and other products installed on such equipment were negligently manufactured, sold, or supplied in that:

a. The design of said asbestos-containing vehicles incorporated and specified the use of asbestos-containing clutch facings/plates, brake linings, gaskets, and related parts and equipment;

b. Asbestos clutch components and brake linings and mechanisms and gaskets wear and/or deteriorate during regular and ordinary use, thus creating friable asbestos dust, which accumulates in and around the engine compartment, clutch components, brake assemblies and/or brake mechanisms, wheel well, wheel cylinder, and other areas on the vehicle body and vehicle component parts;

c. The design of said vehicles and equipment clutch components and brake assemblies, require as a part of their normal operation, use, inspection and maintenance that the asbestos clutch components and brake linings be removed and replaced, and gaskets be similarly removed and replaced;

d. Said defendants specified and required the use of asbestos-containing clutch components and brake linings and gaskets and related asbestos-containing products throughout the time period 1940-1985;

e. Particularly during the inspection, removal and replacement of asbestos-containing clutch components and brake linings, asbestos-containing dust was necessarily and inherently generated because of the design of the clutch components and brake assemblies and/or mechanisms.  The same results occurred when installing or removing asbestos-containing gaskets;

f.    Defendants knew or should have known that the asbestos-containing dust would be generated during the regular use, inspection and maintenance of the vehicles, clutch components and brake assemblies, mechanisms and linings, and gaskets and that such dust created an increased risk of asbestos disease for all users, consumers, or others who breathed said asbestos-containing dust;

g.    The defendants, and each of them, failed to warn and/or properly instruct users, consumers, or others of the asbestos-containing dust hazard which existed at the time of regular operation, inspection, maintenance or replacement of vehicles/equipment and the associated asbestos clutch components and brake linings and gaskets.  Such failure includes, but is not limited to:

i.    Failure to place prominent and/or adequate warnings or instructions for safe use and handling in and on the clutch components and brake assemblies, mechanisms, linings, brake pads, wheel drums, brake mechanism, gaskets, mufflers, or other parts of the vehicles/equipment or vehicle/equipment component parts;

ii.    Failure to place adequate warnings or instructions in the owners' manuals accompanying said automobiles, trucks, construction equipment, heavy equipment;

iii.    Failure to place adequate warnings or instructions on various repair manuals and instructions published by defendants and others; and

iv.    Failure to provide adequate information regarding the asbestos hazards associated with the regular inspection, use and maintenance of the clutch components and brake mechanisms, assemblies and/or linings, and gaskets.

COMPLAINT FOR PERSONAL INJURIES                                                                    PAGE 35

v.      Failure to place prominent and/or adequate warnings or instructions for safe use and handling in and on the packaging of clutch components and brake assemblies, mechanisms, linings. brake pads. wheel drums. brake mechanism, gaskets. mufflers. or other parts or vehicle/equipment component parts;

h.      Said asbestos-containing automobiles, trucks. construction equipment, heavy equipment, released harmful asbestos into the ambient air which plaintiff breathed during the normal and intended use of said vehicles/equipment, including. but not limited to, the regular operation, inspection. maintenance. and repair of such vehicles/equipment, and normal and intended use of said asbestos-containing clutch components and brake assemblies. mechanisms. linings, brake pads. wheel drums, brake mechanism, gaskets. and related products.  Said asbestos-containing vehicles, equipment and component parts contained no warning or caution as to their asbestos content.  The asbestos-containing vehicles. equipment and component parts were not substantively altered in any way. in either design or function. at the times during which harmful asbestos exposures occurred as a result of working with and around said asbestos-containing products. The risk of harm as a result of working with and/or around said asbestos-containing products outweighed any perceived benefit of such products and such products should have and could have been designed and manufactured without excessive risk of harm resulting from the incorporation. use. and specification of asbestos into said asbestos-containing products. including vehicles, equipment and components parts.

88.      The asbestos-containing products, including automobiles, trucks, farm equipment, construction equipment. heavy equipment, gaskets, clutch components and brake assemblies. mechanisms and/or linings. specified. manufactured. sold or supplied by defendants, failed to perform as safely as the ordinary consumer would expect, even though they performed

as designed.

89.    Defendants' specification, use and design of asbestos-containing automobiles, trucks, farm equipment, construction equipment, heavy equipment, gaskets, mufflers, clutch components and brake linings, and other essential equipment incorporated on such vehicles, both as original equipment and as replacement parts, created unreasonable inherent risks which outweighed the benefits of said use and/or design.

90.    The dangers inherent in asbestos-containing automobiles, trucks, farm equipment, construction equipment, heavy equipment, gaskets, clutch components and brake linings were unknown and unforeseeable to plaintiff.

91.    The asbestos-containing automobiles, trucks, construction equipment, heavy equipment, gaskets, clutch components and brake assemblies, mechanisms and/or linings specified, sold or supplied by defendants inspected, maintained, and repaired by plaintiff were not substantially nor improperly altered from that of their original manufacture, nor used in an unintended or unforeseeable fashion.

91.    Plaintiff's exposure to asbestos-containing dust, which caused his injury, was from the inspection, use and maintenance of defendants' automobiles, trucks, farm equipment, equipment, heavy equipment, gaskets, clutch components and brake mechanisms, assemblies and/or linings, and related products and equipment.  Said work produced the release of asbestos dust, which plaintiff inhaled, thus increasing his risk for all asbestos-related disease.

92.    Defendants also should have provided a post-sale warning regarding the health risks associated with working with and/or around their asbestos-containing products since defendants knew their asbestos-containing products posed a substantial risk of harm to the plaintiff and others similarly situated,  defendants were in the best position to provide a warning in that they knew of the identity of the distributors, retailers, and/or users of their products, defendants knew or should have known that plaintiff and others were unaware of the health risks associated with the use of defendant's asbestos-containing products, and a warning could have been communicated or published without excessive difficulty by defendants.

93.    Defendants' negligence and defective products as described in this cause of

action were a direct cause of plaintiff's injuries, and the injuries and damages thereby sustained by plaintiff.

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

### (Strict Liability - Clutch & Brake Components)

**AS AND FOR A FURTHER SEVENTH SEPARATE AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY (STRICT LIABILITY) FOR CLUTCH COMPONENTS AND BRAKE ASSEMBLIES, BRAKE MECHANISMS AND BRAKE LININGS, PLAINTIFFS COMPLAIN OF DEFENDANTS LISTED ON EXHIBIT "D" ATTACHED HERETO and DOES 451-500, AND ALLEGE AS FOLLOWS:**

94.    Plaintiffs, by this reference, incorporate the allegations contained in the Second and Sixth Causes of Action as though fully set forth herein, excepting therefrom any allegations of negligence.

95.    Defendants' defective products as described in this cause of action did not perform as safely as an ordinary consumer would have expected at the time of plaintiff's use.

96.    Defendants' defective products as described in this cause of action were used in a manner foreseeable by defendants.

97.    The gravity of the potential harm resulting from the use of defendants' defective products as described in this cause of action, and the likelihood such harm would occur, outweighed the cost of feasible alternative and safer designs, including providing adequate warning of such potential harm, including asbestos-related disease.

98.    Defendants' conduct and defective products as described in this cause of action were a direct cause of plaintiff's injuries, and the injuries and damages thereby sustained by plaintiff.

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

///

COMPLAINT FOR PERSONAL INJURIES                                          PAGE 38

## EIGHTH CAUSE OF ACTION

### (Loss of Consortium)

**AS AND FOR A FURTHER, ELEVENTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF'S SPOUSE COMPLAINS OF DEFENDANTS, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGES AS FOLLOWS:**

99.     Plaintiff Ray Henderson's spouse, Carolyn Henderson, incorporates by reference each and every paragraph of the First through Seventh Causes of Action herein.

100.     Plaintiffs were married at all times relevant to this action were, and are now, husband and wife. Plaintiffs at all times have enjoyed the benefits of marriage in all aspects, including mental, physical, spiritual.

101.     Prior to plaintiff's injuries as alleged, plaintiff was able and did perform duties as a spouse. Subsequent to the injuries and as a proximate result thereof, plaintiff has been unable to perform the necessary duties as a spouse and the work and service usually performed in the care, maintenance and management of the family home, and plaintiff will be unable to perform such work, service and duties in the future.  As a proximate result thereof, plaintiff's spouse has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to her damages, in an amount presently unknown to plaintiffs but which will be proved at the time of trial.

102.     Discovery of the cause of plaintiff's spouse's loss of consortium, as herein alleged, first occurred within one year of the date this complaint was filed.

103.     As a direct and proximate result of the acts of defendants, their "alternate entities," and each of them, and the severe injuries caused thereby to plaintiff as set forth in this complaint, plaintiff's spouse has suffered, and for a long period of time will continue to suffer loss of consortium, including but not by way of limitation, loss of services, marital relations, society, comfort, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress and general nervousness as a result thereof.

///

WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as is hereinafter set forth.

## DAMAGES

Plaintiffs pray judgment against defendants and each of them as follows:

For special damages according to proof;

For general damages according to proof;

For medical expenses according to proof;

For loss of income according to proof;

For punitive damages according to proof;

For Plaintiffs' costs of suit herein; and,

For such other further relief as this Court and the law deems just and proper.

Dated: February 9, 2026

KELLER, FISHBACK & JACKSON LLP

By: _____
Stephen M. Fishback
Attorneys for Plaintiffs

## EXHIBIT "A"

Plaintiff, Ray Henderson, was diagnosed with an asbestos-caused disease, including but not limited to asbestosis and other lung disease.

Plaintiff, Ray Henderson, was exposed to asbestos of varied types and sources during his employment, which may have included, but is not limited to: insulation/ insulating materials; gaskets; tape; sealants; packing; gauges; pumps; valves; steam traps; compressors; boilers; turbines; generators; HVAC unit, chiller, coolers, sealants/coatings; adhesives/tape/mastic; brakes/clutches/gaskets; flooring tiles; various building materials (such as ceiling tiles, drywall and drywall finishing products, texture, joint compounds, caulk); and other materials containing asbestos currently unknown or unspecified by plaintiff.

Plaintiff, Ray Henderson, and others in plaintiff's vicinity performed various construction/ installation/removal/repair/remodel tasks which may have included, but are not limited to, repairing, remodeling, inspecting, removing, sanding, cutting, mixing, drilling, machining, altering, sweeping and installation, of some or all of the above-referenced asbestos-containing products, as well as cleanup using compressed air, push brooms, dry cloths and other tools after performing such tasks, as well as other general construction tasks. The above-described work caused plaintiff to be exposed to harmful respirable asbestos, which he breathed in, and was a cause of his asbestos related disease.

Plaintiff, Ray Henderson, and others in his immediate vicinity, also performed repair and maintenance to a variety of vehicles from the 1950s, through the 1960s, through a date to be determined. Such repair and maintenance may have included but was not limited to: inspection, removal, installation, grinding, sanding and cutting asbestos-containing friction products on automobiles, light trucks, heavy trucks, farm equipment, and earthmoving equipment including but not limited to: gaskets, brakes, clutches, axles and related component parts. Plaintiff and others around him performed clean-up tasks using compressed air, push brooms, dry cloths and other tools after performing such tasks and other vehicle repair and maintenance. Such repair, maintenance and clean up caused plaintiff to be exposed to harmful respirable asbestos, which he breathed, and was a cause of his asbestos related disease.

Plaintiff was also exposed to asbestos dust that was carried into his work areas on the persons and clothing of his co-workers. While performing his regular job duties, his person and clothing were contaminated with such asbestos dust with resultant contamination of his home and vehicles and other areas of regular living.

Plaintiff alleges and believes that plaintiff Ray Henderson's exposure occurred at job sites including, but not limited to, the following:

COMPLAINT FOR PERSONAL INJURIES                                                                PAGE 41

EMPLOYER: United States Navy
DATE: 1964-1984
JOB DUTIES: Seaman/Gunners Mate
JOB SITE: Various naval bases and ships including but not limited to: Hunter's Point Naval Shipyard, Long Beach Naval Shipyard, Naval Air Station Point Mugu, Norfolk Naval Shipyard, Newport News Shipyard, Philadelphia Navaly Shipyard, Naval Station Mayport, USS Salamonie (AO-26), USS Canberra (CA-70/CAG-2), USS America (CV-66), USS Tattnall (DDG-19), USS Richard E. Byrd (DDG-23), USS Mitscher (DL-2 / DDG-35).

Plaintiff, Ray Henderson, was also exposed to asbestos dust brought home on the clothes of his family members during their employment at which they were exposed to asbestos-containing materials. Ray Henderson's father, Brady Henderson, and brother, Billy Joe Henderson, worked for employers, at jobsites in and around the Commonwealth of Kentucky, during the 1950s and 1960s through a date to be determined, as mechanics and carpenters. During this period of employment, Ray Henderson's father and brother cohabitated with him. The persons, clothing and vehicles of Ray Henderson's father and brother were contaminated such that asbestos dust was transported to Ray Henderson's home thereby contaminating his home, furniture, and linens. Ray Henderson was exposed to asbestos when he traveled and shared vehicles with his father and brother, and in the family home, which he breathed in, and was a cause of his asbestos related disease.

Plaintiffs allege and believe that some of Plaintiff Ray Henderson's exposure to asbestos occurred because of secondary exposure from family members working at job sites including, but not limited to, the following:

EMPLOYER: Self-employed
DATE: 1950s-1964
JOB DUTIES: Mechanic
JOB SITE: Various farms, homes and businesses around the Commonwealth of Kentucky

EMPLOYER: Self-employed
DATE: 1950s-1964
JOB DUTIES: Carpenter
JOB SITE: Various residential locations in and around the Commonwealth of Kentucky

Plaintiffs' investigation and discovery are continuing.

**EXHIBIT "B"**

FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST as successor to The Felt Products Manufacturing Co.

FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST as successor to The Former Vellumoid Division Of Federal-Mogul

FLOWSERVE CORPORATION, individually and as successor-in-interest to Durametallic Corp., Edward Valves, Pacific Pumps, The Duriron Company, Durco International Inc., and BW/IP, Inc.

FOSTER WHEELER LLC, individually and as successor-in-interest to Foster Wheeler Corporation and Foster Wheeler Energy Corporation

GENERAL ELECTRIC COMPANY

KAISER GYPSUM COMPANY, INC.

MERITOR, INC., f/k/a Arvinmeritor, Inc.

METALCLAD INSULATION LLC

MORSE TEC LLC, f/k/a BORGWARNER MORSE TEC, LLC, as successor by merger to Borg-Warner Corporation

PARAMOUNT GLOBAL, f/k/a VIACOM CBS INC., f/k/a CBS CORPORATION, A DELAWARE CORPORATION, f/k/a VIACOM INC., successor by merger to CBS CORPORATION, A PENNSYLVANIA CORPORATION, f/k/a WESTINGHOUSE ELECTRIC CORPORATION

PARKER HANNIFIN CORPORATION, individually and as successor-in interest to Parker Seal Company; and Rockwell Mechanical Packing

REDCO CORPORATION, fka Crane Co., individually and as successor-in-interest to Stockham Valves & Fittings Company, Chapman Valve Mfg. Co. and Alloy Steel Products Co.

STERLING WANDER LLP, f/k/a Honeywell International, Inc., as successor-in-interest to Bendix

THE GOODYEAR TIRE AND RUBBER COMPANY

DOES 1-300

## EXHIBIT "C"

METALCLAD INSULATION LLC:
DOES 301- 450:

## EXHIBIT "D"

FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST as successor to The Felt Products Manufacturing Co.

FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST as successor to The Former Vellumoid Division Of Federal-Mogul

MERITOR, INC., f/k/a Arvinmeritor, Inc.

MORSE TEC LLC, f/k/a BORGWARNER MORSE TEC, LLC, as successor by merger to Borg-Warner Corporation

STERLING WANDER LLP, f/k/a Honeywell International, Inc., as successor-in-interest to Bendix

DOES 451-500.

APR 0 2 2026

COMPLAINT FOR PERSONAL INJURIES                                    PAGE 45